**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BKX SERVICES INC. and DAVID NAMDAR, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED, ABS GLOBAL TRADING LIMITED, 100X HOLDINGS LIMITED, SHINE EFFORT INC LIMITED, HDR GLOBAL SERVICES (BERMUDA) LIMITED, ARTHUR HAYES, SAMUEL REED, BENJAMIN DELO, and GREGORY DWYER,<br><br>Defendants. | Case No. 1:26-cv-06259<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS ABS GLOBAL TRADING LIMITED, SHINE EFFORT INC LIMITED AND SAMUEL REED TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1
STATEMENT OF FACTS ..... 2
I. Procedural History ..... 3
A. California Cases ..... 3
B. SDNY Class Actions ..... 6
ARGUMENT ..... 7
I. Plaintiffs' Class Action Claims Are Time-Barred ..... 7
A. American Pipe Tolling Does Not Extend To Follow-On Class Actions ..... 8
B. These Plaintiffs Were Not Diligent And The Court Should Not Grant Equitable Tolling 12
II. The Individual Claims Fail As A Matter Of Law ..... 13
A. Plaintiffs Fail To Plead Replevin Under Rule 8 ..... 14
1. Replevin Is Not Available For Fungible Goods ..... 14
2. Plaintiffs Fail To Allege Necessary Elements of Replevin ..... 16
B. Plaintiffs Fail To Plead A Common Law Fraud Claim Under Rules 8 and 9 ..... 17
1. The Complaint Fails To Allege The Fraudulent Omissions With Particularity ..... 18
2. The Complaint Does Not Allege That Plaintiffs Relied On The Alleged Omissions .. 21
3. The Complaint Fails To Allege Causation ..... 24
III. The Court Does Not Have Personal Jurisdiction Over Shine Effort ..... 27
A. Plaintiffs Do Not Even Attempt To Plead Personal Jurisdiction With Respect To Shine Effort ..... 29
B. C.P.L.R. 302(a)(1) Does Not Grant Personal Jurisdiction Over Shine Effort Because Shine Effort Does Not Do Business Within New York ..... 30
C. C.P.L.R. 302(a)(2) Does Not Grant Personal Jurisdiction Over Shine Effort Because Plaintiff Has Not Alleged How Shine Effort Committed the Alleged Tortious Acts Within New York ..... 31
D. An Exercise Of Personal Jurisdiction Over Shine Effort Does Not Comport With Due Process ..... 32
CONCLUSION ..... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*,
529 F.Supp. 3d 111 (S.D.N.Y. 2021)....29, 32

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)....18

*ALP, Inc. v. Moskowitz*,
167 N.Y.S.3d 45 (1st Dep't 2022)....15

*Am. Girl, LLC v. Zembrka*,
118 F.4th 271, (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1130 (2025)....30

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974).... *passim*

*Aritomo v. Rhee*,
No. 21-cv-4875-RA, 2022 WL 17156554 (S.D.N.Y. Nov. 22, 2022)....27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....14, 20

*Baliga v. Link Motion Inc.*,
No. 18-cv-11642-VM-VF, 2023 WL 4841883 (S.D.N.Y. July 28, 2023)....23, 24

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig*,
995 F.Supp. 2d 291 (S.D.N.Y. 2014)....22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....14

*Berdeaux v. OneCoin Ltd.*,
561 F.Supp. 3d 379 (S.D.N.Y. 2021)....28, 29, 30, 31

*Betances v. Fischer*,
403 F.Supp. 3d 212 (S.D.N.Y. 2019)....11

*Blake v. JP Morgan Chase Bank NA*,
927 F.3d 701 (3d Cir. 2019)....10

*BMA LLC v. HDR Glob. Trading Ltd.*,
3:20-cv-03345-WHO (N.D. Cal. May 16, 2020)....3–4, 5

*Bocci v. Nationstar Mortg. LLC*,
No. 23-cv-1780-JPC-KHP, 2024 WL 4326932 (S.D.N.Y. Sept. 27, 2024) ....................22

*China Agritech v. Resh*,
584 U.S. 732 (2018)................................................................ *passim*

*In re Celexa and Lexapro Mktg. & Sales Pracs. Litig.*,
915 F.3d 1 (1st Cir. 2019)................................................................9, 11

*Concord Assocs., L.P. v. Entm't Props. Tr.*,
No. 12-cv-1667-ER, 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014)................................19

*In re Crude Oil Commodity Futures Litig.*,
No. 11-cv-3600-WHP, 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012) ................................6

*Dance Theatre of Harlem, Inc. v. ChromaDiverse, Inc.*,
No. 25-cv-2978-RA, 2026 WL 891992 (S.D.N.Y. Mar. 31, 2026)................................28

*DeCastro v. City of New York*,
No. 16-cv-3820-RA, 2019 WL 4509027 (S.D.N.Y. Sept. 19, 2019) ..........................12–13

*Dennis v. JP Morgan Chase & Co.*,
343 F.Supp. 3d 122 (S.D.N.Y. 2018) ................................................................32

*Dennis v. JP Morgan Chase & Co.*,
439 F.Supp. 3d 256 (S.D.N.Y. 2020)................................................................11

*Dolgov v. HDR Glob. Trading Ltd.*,
3:20-cv-07140-WHO (N.D. Cal. Oct. 14, 2021) ................................................4

*Ehrenfeld v. Bin Mahfouz*,
9 N.Y.3d 501 (2007)................................................................30

*Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co.*,
391 F.3d 401 (2d Cir. 2004) *as amended* (Jan. 7, 2005)................................13

*Famular v. Whirlpool Corp.*,
No. 16-cv-944-VB, 2021 WL 395468 (S.D.N.Y. Feb. 3, 2021)................................11, 12

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
783 F.3d 395 (2d Cir. 2015)................................................................17, 24

*In re Fyre Festival Litig.*,
399 F.Supp. 3d 203 (S.D.N.Y. 2019)................................................18, 22, 23–24

*GGC Int'l Ltd. v. Ver*
No. 24-cv-1533-JPC, 2025 WL 327922 (S.D.N.Y. Jan. 29, 2025) ..........................21–22, 23

*Great W. Ins. Co. v. Graham*,
No. 18-cv-6249-VSB, 2020 WL 3415026 (S.D.N.Y. June 22, 2020) ....................................17

*Hardy v. HDR Glob. Trading Ltd.*,
Case No. CGC-20-588283 (Cal. Super. Ct. Nov. 20, 2020) ....................................................4

*Heckl v. Walsh*,
996 N.Y.S.2d 413 (4th Dep't 2014) ..........................................................................................14

*Helio Logistics, Inc. v. Mehta*,
No. 22-cv-10047-NSR, 2023 WL 21887 (S.D.N.Y. Jan. 3, 2023) ..........................................31

*HNW Fam. Off. AG v. Art Assure Ltd., LLC*,
No. 17-cv-7464-ER, 2025 WL 104139 (S.D.N.Y. Jan. 15, 2025) ..........................................16

*HSH Nordbank AG v. RBS Holdings USA Inc.*,
No. 13-cv-3303-PGG, 2015 WL 1307189 (S.D.N.Y. Mar. 23, 2015) .............................19–20

*Huey v. Anavex Life Scis. Corp.*,
180 F.4th 56, (2d Cir. 2026) ...............................................................................................24–25

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
822 F.Supp. 2d 368 (S.D.N.Y. 2011) ........................................................................................24

*Jovel v. i-Health, Inc.*,
No. 12-cv-5614-JG, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) ......................................17

*Kanyshev v. HDR Glob. Trading Ltd.*,
Case No. CGC-20-584483 (Cal. Super. Ct. May 19, 2020) .....................................................4

*Kendall v. Caliber Home Loans, Inc.*,
198 F.Supp. 3d 168 (E.D.N.Y. 2016) .......................................................................................15

*Khmel v. HDR Glob. Trading Ltd.*,
Case No. CGC-21-596114 (Cal. Super. Ct. Oct 20, 2021) ...................................................4, 5

*Khmel v. Vlasov*,
651534/2025 (N.Y. Supr. Ct. Mar. 19, 2025) .............................................................................5

*In re Koreag, Controle et Revision S.A.*,
961 F.2d 341 (2d Cir. 1992) .................................................................................................14–15

*Korwek v. Hunt*,
827 F.2d 874 (2d Cir. 1987) .......................................................................................................10

*Laub v. Faessel*,
745 N.Y.S.2d 534 (1st Dept. 2002) ...........................................................................................25

*Lee v. HDR Global Trading Limited*,
20-cv-03232-ALC (S.D.N.Y. Apr. 23, 2020) ....................6, 7

*In re Lehman Bros. Sec. & ERISA Litig.*,
No. 09-md-2017-LAK, 2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013) ....................24

*In re Lumerman*,
856 N.Y.S.2d 469 (Westchester Cnty. 2008) ....................16

*Lyashenko v. HDR Glob. Trading Ltd.*,
Case No. CGC-21-595865 (Cal. Super. Ct. Oct 12, 2021) ....................4

*Mahdi v. Midland Credit Mgmt., Inc.*,
No. 25-cv-6211-RA, 2026 WL 867011 (S.D.N.Y. Mar. 30, 2026) ....................28

*Mbadiwe v. Amazon.com, Inc.*,
No. 22-cv-9542-VSB, 2025 WL 2675937 (S.D.N.Y. Sept. 18, 2025) ....................11, 12

*Melrose Credit Union v. Ulysse*,
60 Misc. 3d 1206(A), 109 N.Y.S.3d 838 (Queens Cnty. 2018) ....................16

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
531 F.Supp. 3d 673 (S.D.N.Y. 2021) ....................18, 19

*MSP Recovery Claims, Series LLC v. Takeda Pharms. Am., Inc.*,
No. 19-cv-5610-NRB, 2021 WL 4461773 (S.D.N.Y. Sept. 29, 2021) ....................24, 26–27

*In re NTL, Inc. Sec. Litig.*,
347 F.Supp. 2d 15 (S.D.N.Y. 2004) ....................18–19

*In re Optimal U.S. Litig.*,
837 F.Supp. 2d 244 (S.D.N.Y. 2011) ....................20

*PetEdge, Inc. v. Garg*,
234 F.Supp. 3d 477 (S.D.N.Y. 2017) ....................19

*In re Platinum-Beechwood Litig.*,
427 F.Supp. 3d 395 (S.D.N.Y. 2019) ....................17

*Poulard v. Delphin*,
No. 24-3015, 2025 WL 1417664 (2d Cir. May 16, 2025) ....................7

*Press Access LLC v. 1 800 Postcards, Inc.*,
No. 11-cv-1905-KBF, 2012 WL 4857547 (S.D.N.Y. Oct. 9, 2012) ....................16

*Ramiro Aviles v. S & P Glob., Inc.*,
380 F.Supp. 3d 221 (S.D.N.Y. 2019) ....................24

*Razvan v. HDR Glob. Trading Ltd.*,
3:20-cv-08034-WHO (N.D. Cal. Nov. 13, 2020) ....................................................................4

*Redtail Leasing, Inc. v. Bellezza*,
No. 95-cv-5191-JFK, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ......................................24

*Sager v. Blain*,
44 N.Y. 445 (1871). ....................................................................................................................14

*Sarafianos v. Shandong Tada Auto-Parking Co.*,
No. 13-cv-3895-SAS, 2014 WL 7238339 (S.D.N.Y. Dec. 19, 2014). ...................................21

*Schultz v. Safra Nat. Bank of New York*,
377 F. App'x 101 (2d Cir. 2010) ...............................................................................................28

*SEC v. U.S. Envtl., Inc.*,
82 F.Supp. 2d 237 (S.D.N.Y. 2000)...........................................................................................18

*Serenity Alpha, LLC v. Northway Mining, LLC*,
531 F.Supp. 3d 512 (N.D.N.Y. 2021).........................................................................................15

*Solomon R. Guggenheim Found. v. Lubell*,
77 N.Y.2d 311 (1991) ...................................................................................................................7

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
366 F.Supp. 3d 516 (S.D.N.Y. 2018), *aff'd sub nom. Sonterra Cap. Master Fund, Ltd. v. UBS AG*, 152 F.4th 404 (2d Cir. 2025) ...............................................................19

*Sorokin v. HDR Glob. Trading Ltd.*,
3:21-cv-03576-WHO (N.D. Cal. May 12, 2021)..........................................................................4

*Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*,
383 F.Supp. 2d 428 (S.D.N.Y. 2003).................................................................................25, 26

*Spetner v. Palestine Inv. Bank*,
70 F.4th 632, 639 (2d Cir. 2023) ...............................................................................................30

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*,
829 F.3d 173 (2d Cir. 2016).........................................................................................................22

*In re SSA Bonds Antitrust Litig.*,
420 F.Supp. 3d 219 (S.D.N.Y. 2019)...................................................................................29, 32

*Studio Giraffe LLC v. Nizomov*,
No. 25-cv-5322-RA, 2026 WL 1413583 (S.D.N.Y. May 20, 2026). .......................................31

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
250 F. 3d 87 (2d Cir. 2001)..........................................................................................................26

*Tese-Milner v. De Beers Centenary A.G.*,
613 F.Supp. 2d 404 (S.D.N.Y. 2009)....................29

*Trombetta v. Novocin*,
No. 18-cv-993-RA, 2021 WL 6052198 (S.D.N.Y. Dec. 21, 2021)....................31

*In re UiPath, Inc. Sec. Litig.*,
755 F.Supp. 3d 498 (S.D.N.Y. 2024)....................13

*U.S. v. Hayes*,
No. 20-cr-00500-JGK (S.D.N.Y. Sept. 21, 2020)....................3

*U.S. v. HDR Glob. Trading Ltd.*,
No. 24-cr-00424-JGK (S.D.N.Y. July 10, 2024)....................3

*U.S. v. Nelson*,
277 F.3d 164, 186 (2d Cir. 2002)....................25

*Wai Chu v. Samsung Elecs. Am., Inc.*,
No. 1:18-cv-11742-GHW, 2020 WL 1330662 (S.D.N.Y. Mar. 23, 2020)....................17

*Walden v. Fiore*,
571 U.S. 277 (2014)....................32

*Warren v. Garvin*,
219 F.3d 111 (2d Cir. 2000)....................12

*Williams v. HDR Global Trading Limited*,
20-cv-02805-ALC (S.D.N.Y. Apr. 3, 2020)....................6

*Williams v. Tech Mahindra (Americas) Inc.*,
70 F.4th 646 (3d Cir. 2023)....................10, 11

*Williams v. Tech Mahindra (Americas) Inc.*,
No. 24-1434, 2024 WL 5055834 (3d Cir. Dec. 10, 2024), *cert. denied*, 145 S. Ct. 2817 (2025)....................10

*Wilson-Chalkley v. HDR Glob. Trading Ltd.*,
Case No. CGC-20-588042 (Cal. Super. Ct. Nov. 30, 2020)....................4

*Zdilar v. HDR Glob. Trading Ltd.*,
Case No. CGC-21-590192 (Cal. Super. Ct. Mar. 9, 2021)....................4

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*,
333 F.3d 74 (2d Cir. 2003)....................13

*In re Zinc Antitrust Litig.*,
155 F.Supp. 3d 337 (S.D.N.Y. 2016)....................29

**Statutes and Rules**

N.Y. C.P.L.R. 302 .......... 27, 30, 31

Fed. R. Civ. P. 8(a)(2) .......... 14

**Other Authorities**

12B Carmody-Wait 2d, N.Y. Prac. § 82:19 .......... 15

Guido Calabresi, *Concerning Cause and the Law of Torts: An Essay for Harry Kalven, Jr.*, 43 U. Chi. L. Rev. 69 (1975) .......... 25

Jorrit Zwijnenburg et al., *F.18 The Recording of Fungible Crypto Assets in Macroeconomic Statistics*, Financial & Payments Systems Task Team, International Monetary Fund (Nov. 2024) .......... 15

Defendants ABS Global Trading Limited ("ABS"), Shine Effort Inc Limited ("Shine Effort") and Samuel Reed respectfully submit this memorandum of law in support of their motion to dismiss the Complaint (ECF No. 1) under Federal Rules of Civil Procedure 12(b)(2) & (6).

**PRELIMINARY STATEMENT**

The facts alleged in this Complaint have been pled in at least 25 prior complaints, in three different courts, against ABS, Shine Effort, Mr. Reed, and/or other individuals and entities affiliated with the BitMEX cryptocurrency derivatives trading platform. All of those actions have been dismissed. The corporate plaintiff here, BKX Services, Inc. ("BKX"), is controlled by individuals who made similar allegations against the same defendants in 2020 and 2021 in state and federal courts in California, only to have those cases dismissed. BKX and the individuals behind it then sat on their hands while other counsel brought class claims in this District raising the same meritless allegations and litigated them for five years, cycling through plaintiffs who lost interest in the litigation, before concluding, consistent with counsel's fiduciary obligations to the class, that voluntarily dismissing the action was the appropriate course. More than a year after that voluntary dismissal, these plaintiffs now seek to renew the class action, on the same facts but pleading different legal theories, and ask the Court for equitable tolling of the statute of limitations, as without such tolling their claims are long since time-barred. Equity does not require or support such a result. The Defendants have been battling these meritless allegations for more than six years. The claims have been ventilated through substantial discovery until responsible counsel and their clients walked away from the case. This Court should not permit the claims to be resurrected.

## STATEMENT OF FACTS

From its founding in 2014 through the early 2020s, BitMEX was a leading (and for a period *the* leading) digital asset derivatives trading platform in the world. (Compl. ¶ 37). On BitMEX, customers could trade futures and options on various digital assets, including Bitcoin and Ethereum, depositing Bitcoin into accounts on the platform and trading, often on a leveraged basis, based on those deposits. (Compl. ¶¶ 38–39). The platform's trading engine ensured that losing positions would be closed before the customer's account ran out of sufficient funds to maintain the position. (Compl. ¶ 5). Such position-closing events were called "liquidations" and customers were notified through the BitMEX website and the platform's Terms of Service of the presence and mechanics of the liquidation process, which was essential to a key aspect of BitMEX's operation: users could lose no more than they deposited in their trading accounts. Most liquidations involved a small contribution to an insurance fund maintained by the platform as a backstop to ensure that those on the winning side of trades would get paid out if the trading engine did not manage to close the loser's position before it ran out of funds.

The BitMEX platform is owned by Defendant HDR Global Trading Limited ("HDR"), which in turn is owned principally by Defendants Arthur Hayes, Ben Delo, and Sam Reed.[1] (Compl. ¶¶ 19, 25–27). Defendant ABS is a U.S. subsidiary of HDR. (*Id.* ¶ 20). Defendant Shine Effort is a Hong Kong limited liability corporation. (*Id.* ¶ 22). Gregory Dwyer became involved with HDR in 2015. (*See id.* ¶ 29). After the business' stratospheric rise in the market from 2014 to 2020, BitMEX and its founders ran into legal troubles. (*Id.* ¶ 12). The founders were indicted in this District in October 2020 for violations of the Bank Secrecy Act, through

[1] Defendants ABS and Reed accepted service of the Complaint on July 30, 2026; Shine Effort was served on September 10, 2026. Mr. Delo was served effective September 9, 2026, and will respond to the Complaint on or before Wednesday, September 30, 2026. The remaining defendants, all of whom are domiciled outside the United States, have not been served as of the filing of this motion.

their failures to ensure that the BitMEX platform complied with the AML requirements of that Act. The founders pleaded guilty in 2022 and received non-custodial sentences; HDR pleaded guilty in 2024.[2] The charges concerned solely the failure to sufficiently comply with U.S. AML requirements; no fraud charges of any kind were ever brought. The legal issues compounded market challenges, and BitMEX's business declined significantly after 2020. The platform ceased trading on September 23, 2026.

## I. <u>Procedural History</u>

Starting in 2020, ABS, Shine Effort, Mr. Reed, and various other Defendants in this action have repeatedly been sued in California and in this District on various legal theories based on essentially the same factual allegations: that BitMEX forced liquidations of its customers by trading against them to prompt liquidations or by manipulating reference exchanges that drove pricing of contracts on the BitMEX platform, also to force liquidations, all to reap an alleged reward for Defendants through the insurance fund. Each suit has been dismissed, either by a court or voluntarily.

### A. <u>California Cases</u>

Most of the prior lawsuits were filed in California's state and federal courts in 2020 and 2021, alleging various articulations of the fraud scheme outlined above. Those cases were: *BMA LLC v. HDR Glob. Trading Ltd.*, 3:20-cv-03345-WHO (N.D. Cal. May 16, 2020) (the "BMA Action") (plaintiffs Dolgov, Dubinin, and Razvan voluntarily dismissed their claims on September 2, 2021, after Judge Orrick indicated he was inclined to dismiss the case with prejudice and, on September 7, 2021, the remaining claims were dismissed with prejudice for

---

[2] Hayes, Delo, Reed, Dwyer, and HDR received Presidential Pardons in March 2025. *See U.S. v. Hayes*, 1:20-cr-500-JGK (S.D.N.Y. Mar. 27, 2025), ECF No. 443; *U.S. v. HDR Glob. Trading Ltd.*, 1:24-cr-424-JGK (S.D.N.Y. Mar. 27, 2025), ECF No. 60.

failing to state a legally cognizable claim); *Dolgov v. HDR Glob. Trading Ltd.*, 3:20-cv-07140-WHO (N.D. Cal. Oct. 14, 2021) (consolidated into the BMA Action on November 5, 2020 and voluntarily dismissed on September 7, 2021, after Judge Orrick indicated he was inclined to dismiss the case with prejudice); *Razvan v. HDR Glob. Trading Ltd.*, 3:20-cv-08034-WHO (N.D. Cal. Nov. 13, 2020) (consolidated into the BMA Action on November 25, 2020 and voluntarily dismissed on September 7, 2021, after Judge Orrick indicated he was inclined to dismiss the case with prejudice); *Sorokin v. HDR Glob. Trading Ltd.*, 3:21-cv-03576-WHO (N.D. Cal. May 12, 2021) (voluntarily dismissed on January 24, 2022 following defendants' motion to dismiss for forum non conveniens); *Kanyshev v. HDR Glob. Trading Ltd.*, Case No. CGC-20-584483 (Cal. Super. Ct. May 19, 2020) (dismissed on March 24, 2022 following the grant of defendants' motion to dismiss on the ground of inconvenient forum); *Hardy v. HDR Glob. Trading Ltd.*, Case No. CGC-20-588283 (Cal. Super. Ct. Nov. 20, 2020) (dismissed on June 28, 2021 following the grant of defendants' motion to dismiss on the ground of inconvenient forum); *Wilson-Chalkley v. HDR Glob. Trading Ltd.*, Case No. CGC-20-588042 (Cal. Super. Ct. Nov. 30, 2020) (dismissed on June 28, 2021 following the grant of defendants' motion to dismiss on the ground of inconvenient forum); *Zdilar v. HDR Glob. Trading Ltd.*, Case No. CGC-21-590192 (Cal. Super. Ct. Mar. 9, 2021) (dismissed on November 10, 2021 following the grant of defendants' motion to dismiss on the ground of inconvenient forum); *Lyashenko v. HDR Glob. Trading Ltd.*, Case No. CGC-21-595865 (Cal. Super. Ct. Oct 12, 2021) (dismissed on March 24, 2022 following the grant of defendants' motion to dismiss on the ground of inconvenient forum); *and Khmel v. HDR Glob. Trading Ltd.*, Case No. CGC-21-596114 (Cal. Super. Ct. Oct 20, 2021) (the "Khmel Action") (dismissed on March 24, 2022 following the grant of defendants' motion to dismiss on the ground of inconvenient forum).

All of these California cases were filed by the same lawyers at Consensus Law PLLC. *See e.g.*, Decl. Pavel Podogin Supp. Pls.' Admin. Mot. Relate Cases, *BMA LLC*, 3:20-cv-03345-WHO, ECF No. 175. At least one of the cases was brought by a plaintiff who controls or controlled current plaintiff BKX Services, Inc., as explained below. Several of the plaintiffs in the California cases were connected to a digital asset platform called BANKEX. In 2025, BKX Services, Inc., plaintiff in this action, filed an action in the Supreme Court of New York, New York County, against former employees of BANKEX. Complaint, *Khmel v. Vlasov*, 651534/2025 (N.Y. Supr. Ct. Mar. 19, 2025), NYSCEF No. 1. In that complaint, BKX Services, Inc. alleged that another plaintiff in the same action, Igor Khmel, "was the founder and Chief Executive Officer (CEO) of BANKEX, an enterprise he established in 2016 to develop digital banking platforms for cryptocurrency and digital assets. He oversaw BANKEX's operations across various affiliated entities including BKX, **BKX Services Inc.**, Bankex SEA Pte. Ltd., and Bankex Foundation." *Id.* ¶ 11 (emphasis added). That Igor Khmel, who "oversaw BANKEX's operations across various affiliated entities including . . . BKX Services, Inc.," appears to be the plaintiff in the Khmel Action, one of the California cases against HDR and the other BitMEX-related defendants, as the California Superior Court noted in an order that "Plaintiff's counsel identified [plaintiff] as 'Igor George Khmel.'" Order Granting Mot. Dismiss, *Khmel*, Case No. CGC-21-596114 at 8:20 (Cal. Super. Ct. Mar. 16, 2022). In the same New York Supreme Court action, plaintiff Vitaly Dubinin in the BMA Action is listed as a "key employee[] from BANKEX." Complaint, *Khmel*, 651534/2025 (N.Y. Supr. Ct. Mar. 19, 2025), NYSCEF No. 1 at ¶ 59. And Dolgov, whose case was consolidated into the BMA Action, was identified in the Khmel Action as a co-founder of BANKEX. Ex. C, Decl. Stephen Hibbard Supp. Defs.' Mot. Dismiss, *Khmel*, Case No. CGC-21-596114 (Cal. Super. Ct. Dec. 31, 2021).

**B. <u>SDNY Class Actions</u>**

On April 3, 2020, two well-known plaintiffs' firms filed *Williams v. HDR Global Trading Limited*, 20-cv-02805-ALC, in this District, alleging violations of the securities (failure to register, sale of unregistered securities, fraud) and commodities laws (manipulation) against defendants including HDR, ABS, and Mr. Reed, including the same fact allegations that grounded the California cases.

Later in April 2020, counsel divided *Williams* into two class actions: *Williams*, alleging securities law violations, and *Lee v. HDR Global Trading Limited*, 20-cv-03232-ALC, alleging commodities manipulation, both on broadly the same set of underlying factual allegations. Both matters were before Judge Carter.

In *Williams,* the Court appointed Chase Williams as lead plaintiff and approved Roche Cyrulnik Freedman LLP and Selendy & Gay, PLLC as co-lead counsel, by order dated July 29, 2020. *Williams*, 20-cv-02805-ALC, ECF No. 46. After amending the complaint, plaintiffs voluntarily dismissed the case on April 27, 2021. *Id*. at ECF No. 76.

In *Lee,* the Court appointed Roche Cyrulnik Freedman LLP and Selendy & Gay, PLLC as interim class counsel by order dated June 4, 2020, *Lee*, 20-cv-03232-ALC at ECF No. 32, following the Rule 23(g) procedure created "to assure performance of the fiduciary responsibilities owed by both the lawyer and the lead plaintiff to the class." *In re Crude Oil Commodity Futures Litig*., No. 11-cv-3600-WHP, 2012 WL 569195, at *1 (S.D.N.Y. Feb. 14, 2012) (internal citation omitted). Between that date and March 31, 2024, plaintiffs filed two amended complaints, expanding their fact allegations around the same set of core claims, *Lee*, 20-cv-03232-ALC at ECF Nos. 53, 115, defendants moved to dismiss twice, *id*. at ECF Nos. 63–67, 120–125, and the Court denied the motions, *id*. at ECF Nos. 143, 145, 147. In the interim, the Court heard and ruled on a motion by the Roche firm to withdraw as counsel, *id*. at ECF Nos. 105, 133, and, following denial

of the motion to dismiss, two of the original named plaintiffs abandoned the case. First, plaintiff Brett Messieh informed counsel that he no longer wanted to be involved in the case and by June 2024, Messieh had stopped responding to counsel, *id*. at ECF Nos. 178–181, 186. Plaintiffs filed a third amended complaint on October 7, 2024, adding Felix Lufkin as a new lead plaintiff. *Id*. at ECF No. 214. Original plaintiff Drew Lee then stopped responding to counsel in March 2025. *Id*. at ECF Nos. 242–245, 251, 261.

The Court entered discovery scheduling orders in May and November 2024. *Id*. at ECF Nos. 160, 222. As governed by those orders, document discovery was substantially completed by January 31, 2025, depositions commenced on March 17, 2025, and fact discovery was to be completed by September 30, 2025. *Id*. at ECF No. 222.

On June 11, 2025, after more than a year of discovery, interim class counsel agreed, on behalf of the sole remaining lead plaintiff, to voluntarily dismiss his claims. *Id*. at ECF No. 258. The Court granted the request on June 30, 2025. *Id*. at ECF No. 260. In the more than five years that the *Lee* class action was pending, defendants filed two fully-briefed motions to dismiss, produced millions of pages and terabytes of data in discovery, engaged experts, and spent many millions of dollars in the process.

## ARGUMENT

### I. <u>Plaintiffs' Class Action Claims Are Time-Barred</u>

Plaintiffs' class action claims are out of time. Any alleged tort occurred, at the latest, on April 3, 2020, and the applicable statute of limitations is three years for replevin, *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 317 (1991), and six years (or two years from discovery) for common law fraud, *Poulard v. Delphin*, No. 24-3015, 2025 WL 1417664, at *1 (2d Cir. May 16, 2025). Their individual claims, if they arise from the same set of allegations made in *Williams* and *Lee*, may benefit from equitable tolling as recognized in *American Pipe &*

*Construction Co. v. Utah*, 414 U.S. 538 (1974). But equitable tolling is the exception, not the rule, and the Supreme Court has explained that "[t]ime to file a class action falls outside the bounds of *American Pipe*." *China Agritech v. Resh*, 584 U.S. 732, 748 (2018).

**A. _*American Pipe*_ <u>Tolling Does Not Extend To Follow-On Class Actions</u>**

The Supreme Court in *American Pipe* and *China Agritech* sought to balance the interests of finality and fairness served by the limitation of actions against the efficiency and economy of litigation sought by Rule 23's class action procedures. That balance allows individual claims to benefit from equitable tolling of the limitations period while a class action of which the individual is a putative member is pending. *See id.* at 744 ("The time to file individual actions once a class action ends is finite, extended only by the time the class suit was pending."). It does not allow such tolling for follow-on class actions, as doing so would conflict with the desire, reflected in Rule 23's structure, for "putative class representatives to file suit well within the limitation period and seek certification promptly." *Id*. at 748. That balance means that this follow-on class action does not benefit from equitable tolling and is time-barred.

*American Pipe* held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. That holding was driven by the purpose and structure of Rule 23's class action procedures, in particular the desire to avoid the filing of "repetitious papers and motions" on behalf of individual class members seeking to ensure their claims were not time-barred. *Id.* at 551 ("To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or

intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid.”).

*China Agritech* took up the question whether a class action tolled the limitations period for subsequent class actions, holding that “*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.” 584 U.S. at 736. That holding, too, was driven by the purpose and structure of Rule 23’s class action procedures: while tolling individual claims is efficient in avoiding a multiplicity of filings while the court determines whether the class action will proceed, “[w]ith class claims on the other hand, efficiency favors early assertion of competing class representative claims.” *Id*. at 740. The Court noted that “Rule 23 evinces a preference for preclusion of untimely successive class actions by instructing that class certification should be resolved early on.” *Id.* at 741. The Court further reasoned that tolling for successive class actions “could be limitless” in that such a rule “would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation.” *Id*. at 743, 744. The Court concluded that while “[t]he watchwords of *American Pipe* are efficiency and economy of litigation, . . . [e]xtending *American Pipe* tolling to successive class actions does not serve that purpose.” *Id.* at 748. “Time to file a class action falls outside the bounds of *American Pipe*.” *Id.*

The Courts of Appeals have recognized the breadth of the *China Agritech* rule. The First Circuit refused to toll the limitations period for a successive class action where the first class action ended with no ruling on class certification. *In re Celexa and Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 16–17 (1st Cir. 2019). While plaintiffs argued that the lack of a class certification ruling insulated them from the *China Agritech* rule, the First Circuit disagreed,

noting that while *China Agritech* involved a prior ruling denying class certification, "the Court proceeded to provide a broader answer: Its precedents do not 'so much as hint[] that [*American Pipe*] tolling extends to otherwise time-barred class claims.'" *Id*. at 17 (quoting *China Agritech*, 584 U.S. at 740). The First Circuit read *China Agritech* to mean that "the tolling effect of a motion to certify a class applies only to individual claims, no matter how the motion is ultimately resolved. To hold otherwise would be to allow a chain of withdrawn class-action suits to extend the limitations period forever." *Id.*

Similarly, the Third Circuit refused *American Pipe* tolling for a successive class action where the first class action was dismissed as untimely (rather than a ruling on class certification), explaining that "*China Agritech* is clear and unequivocal: courts may not toll new class actions under *American Pipe*, period." *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 709 (3d Cir. 2019); *see also Williams v. Tech Mahindra (Ams.) Inc.*, No. 24-1434, 2024 WL 5055834, at *3 (3d Cir. Dec. 10, 2024), *cert. denied*, 145 S. Ct. 2817 (2025) (noting that "a would-be class representative who commence[d] suit after expiration of the limitations period [] may not receive equitable tolling under *China Agritech*")(internal quotation omitted); *Williams v. Tech Mahindra (Ams.) Inc.*, 70 F.4th 646, 651 (3d Cir. 2023) (explaining that *China Agritech*'s holding "precluding the application of *American Pipe* to successive class actions" "serves several salutary purposes: it discourages duplicative lawsuits, promotes fairness to both sides, and avoids the perpetual stacking of repetitive claims").

The Second Circuit anticipated the Supreme Court's *China Agritech* rule in its 1987 decision in *Korwek v. Hunt*, holding that *American Pipe* tolling did not apply to a subsequent class action where the court reached a "definitive determination of the inappropriateness of class certification" in the first class action. 827 F.2d 874, 879 (2d Cir. 1987). This District's rulings

on the meaning of *China Agritech* span a range of views. Judge Kaplan in *Dennis v. JP Morgan Chase* denied *American Pipe* tolling for a class claim brought by a new but late-filing plaintiff replacing a prior plaintiff after a denial of class certification. 439 F.Supp. 3d 256 (S.D.N.Y. 2020). The court rejected the plaintiff's argument that *China Agritech* applied only to successive class actions, rather than new plaintiffs joining a pending class action, emphasizing the lack of diligence by the new plaintiff in waiting to join the action, the policy recognized by *China Agritech* to "propel putative class representatives to file suit well within the limitation period and seek certification promptly," and the "limitless" nature of such tolling were it to be allowed. *Id.* at 265, 266 (quoting *China Agritech*, 584 U.S. at 744, 748).

Other decisions in this District go the other way, holding that *China Agritech* prohibits equitable tolling for subsequent class actions only where the first class action ended with a denial of class certification. *See, e.g., Mbadiwe v. Amazon.com, Inc.*, No. 22-cv-9542-VSB, 2025 WL 2675937 at *15 (S.D.N.Y. Sept. 18, 2025); *Famular v. Whirlpool Corp.*, No. 16-cv-944-VB, 2021 WL 395468, at *2 (S.D.N.Y. Feb. 3, 2021); *Betances v. Fischer*, 403 F.Supp. 3d 212, 223 (S.D.N.Y. 2019).

It is certainly true that *China Agritech* considered a case where the first class action ended with a denial of class certification. *China Agritech*, 584 U.S. at 737–38. But, as the First and Third Circuits have recognized, its language and its rationale cover more territory. *In re Celexa and Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d at 17; *Tech Mahindra (Ams.) Inc.*, 70 F.4th at 651. The Court stressed that "with class claims, . . . efficiency favors early assertion of competing class representative claims" and noted that "Rule 23 evinces a preference for preclusion of untimely successive class actions by instructing that class certification should be resolved early on." *China Agritech*, 584 U.S. at 740, 741. Thus, allowing equitable tolling to

enable follow-on class actions beyond the statute of limitations conflicts with the goals of Rule 23 rather than supporting them. None of the cases construing *China Agritech* to allow tolling for subsequent class actions where the first action did not involve a ruling on class certification confront this central policy rationale of *China Agritech*. *See e.g., Mbadiwe*, 2025 WL 2675937, at *15 (focusing on notice to defendants); *Famular*, 2021 WL 395468, at *2 (focusing on avoidance of multiplicity of litigation and conservation of judicial resources).

The policy drivers of *American Pipe* and *China Agritech* are to foster the efficiency and economy of litigation promoted by the class action rules and to incentivize potential class plaintiffs and class counsel to engage with the class process at the outset rather than waiting while other representatives engage with the Court and prosecute the litigation. *See e.g.*, *China Agritech*, 584 U.S. at 740. As the Supreme Court observed, "multiple [class action] filings may aid a district court in determining, early on, whether class treatment is warranted, and if so, which of the contenders would be the best representative. And sooner rather than later filings are just what Rule 23 encourages." *Id.* at 747. These Plaintiffs chose not to participate in that process when it began in 2020. This Court should not permit them to pick the class case up six years later.

### B. These Plaintiffs Were Not Diligent And The Court Should Not Grant Equitable Tolling

The equitable tolling doctrine applied in *American Pipe* and *China Agritech* is just that: a means of doing equity. "Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). This Court has emphasized that "[t]he party seeking to invoke equitable tolling must demonstrate that they 'acted with reasonable diligence during the time period [they] seek[] to have tolled,' and must 'prove[] that the circumstances are so extraordinary that the doctrine should

apply.'" *DeCastro v. City of New York*, No. 16-cv-3820-RA, 2019 WL 4509027 at *8 (S.D.N.Y. Sept. 19 2019) (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003)).

Plaintiffs have not been diligent. Their prior claims against these Defendants making the same allegations show that they have been on notice of these alleged wrongs for more than six years. They did not aid the *Lee* Court by participating in the Rule 23 process in this District in 2020, and neither Namdar nor BKX Services sought to become named plaintiffs when Felix Lufkin was added as a named plaintiff in 2024. There is no inequity for this Court to remedy or prevent; these Plaintiffs have not been diligent, the allegations have previously been tested and abandoned by serious counsel in line with their fiduciary obligations, and fairness to these Defendants (the principal grounding of the statute of limitations in the first place) requires that this series of actions now be at an end.[3] *In re UiPath, Inc. Sec. Litig.*, 755 F.Supp. 3d 498, 518 (S.D.N.Y. 2024) ("defendants were entitled to rely on th[e] fact [the statute of limitations had run] and assess their litigation risks accordingly"); *see also Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d 401, 409 (2d Cir. 2004), *as amended* (Jan. 7, 2005) (explaining that "[s]tatutes of limitations protect interests in reliance and repose, guard against stale demands, and limit the circumstances in which a reviewing court can grant relief.") (internal citations omitted).

## II. <u>The Individual Claims Fail As A Matter Of Law</u>

The Complaint should also be dismissed because Plaintiffs fail to plead the elements of common law replevin and fraud as required by Rule 8. The Supreme Court has emphasized that

---

[3] In addition to untimely claims, Plaintiffs come before the Court with unclean hands, having violated the BitMEX terms of service by trading from within the United States and Plaintiff Namdar's account having been created using an alias. *See* Compl. ¶¶ 14, 17–18.

Federal Rule of Civil Procedure 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and further explained that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 & n.3 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Averments comprising "no more than conclusions[] are not entitled to the assumption of truth," and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**A. Plaintiffs Fail To Plead Replevin Under Rule 8**

**1. Replevin Is Not Available For Fungible Goods**

Plaintiffs' replevin claim must be dismissed because replevin is not available to plaintiffs seeking the return of fungible goods. *See Sager v. Blain*, 44 N.Y. 445, 450–51 (1871). When considering replevin claims for the return of money, courts have noted that, "[u]nless the currency can be specifically identified, i.e., it consists of specific, identifiable bills or coins, replevin does not lie," and as a result, "[o]rdinary currency, as a rule, is not subject to replevin." *Heckl v. Walsh*, 996 N.Y.S.2d 413, 415 (4th Dep't 2014) (internal citation omitted); *see also Sager*, 44 N.Y. at 451 (where plaintiff sought return of bonds and $9,000 currency, the bonds were specifically identifiable, but "plaintiff had no cause of action for the recovery of the possession of any identical or specific money" where "none was described" in the complaint); *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 357–58 (2d Cir. 1992) (analyzing the N.Y. U.C.C. replevin provisions that apply "where goods have been identified," and finding that a contract for "any nonspecific U.S. dollars in the specified quantity" does not satisfy the

identification requirement); *Serenity Alpha, LLC v. Northway Mining, LLC*, 531 F.Supp. 3d 512, 521 (N.D.N.Y. 2021) (motion for a writ of replevin denied where it sought "a money payment made directly to defendants by their insurance carrier, not the type of specifically identifiable goods that can be provisionally restored to plaintiffs"); *Kendall v. Caliber Home Loans, Inc.*, 198 F.Supp. 3d 168, 171 (E.D.N.Y. 2016) (finding that plaintiff had failed to state a replevin claim as the property sought was not "specific and identifiable" where plaintiff sought "a general sum of money in the amount of $253,917.00"); *ALP, Inc. v. Moskowitz*, 167 N.Y.S.3d 45, 53 (1st Dep't 2022) (reversing the lower court's denial of a motion to dismiss as plaintiffs sought "the return of commissions – that is, 'ordinary currency'" as "no replevin claim lies."); 12B Carmody-Wait 2d, N.Y. Prac. § 82:19 (explaining that "[i]n order to be recoverable in replevin, property must exist in specie so as to be capable of identification. Generally, therefore, money is not subject to replevin.").

Bitcoin is fungible. Jorrit Zwijnenburget al., *F.18 The Recording of Fungible Crypto Assets in Macroeconomic Statistics*, Financial & Payments Systems Task Team, International Monetary Fund (Nov. 2024) (using bitcoin as the example of a fungible asset because each bitcoin is "divisible and not unique."). Here, Plaintiffs BKX Services, Inc. and Namdar do not seek specific and identifiable coins. Instead, they seek sums of 305.80903296 BTC and 316.85578220 BTC, respectively, (Compl. ¶¶ 16, 18), namely the total sums of bitcoin they allegedly lost through liquidations, evidencing their recognition of the fungible nature of bitcoin. Plaintiffs have not, and indeed cannot, identify the specific bitcoins that are the subject of their claim. Because Plaintiffs do not and cannot identify the bitcoin subject to the claim of replevin, their claim must be dismissed.

### 2. Plaintiffs Fail To Allege Necessary Elements of Replevin

Even if replevin was available for fungible goods, Plaintiffs' claim must be dismissed as they fail to allege that they made demand for the return of their property. In New York, "to make out a claim of replevin against a party with lawful possession of chattel, a party must show (1) that it has a superior possessory right to the chattel, and (2) that it made a demand for possession of the chattel from the defendant." *Press Access LLC v. 1 800 Postcards, Inc.*, No. 11-cv-1905-KBF, 2012 WL 4857547, at *1 (S.D.N.Y. Oct. 9, 2012). Courts have held that "[a] substantive element of a cause of action for replevin is that the plaintiff demand the return of the subject property and the one in possession thereof refuses to return it." *Melrose Credit Union v. Ulysse*, 60 Misc. 3d 1206(A), 109 N.Y.S.3d 838 (Queens Cnty. 2018) (quoting *In re Lumerman*, 856 N.Y.S.2d 469, 474 (Westchester Cnty. 2008).

Here, there is no dispute that Plaintiffs voluntarily deposited their bitcoin on the BitMEX platform and that the bitcoin lawfully came into Defendants' possession. (*See* Compl. ¶ 91 ("Plaintiffs and members of the Class submitted their own bitcoin as collateral to purchase BitMEX's products.")). Plaintiffs instead allege that, when they were liquidated, there was a "seizure—theft—of bitcoin that rightfully belongs to Plaintiffs and members of the Class." (*Id.* ¶ 92). Plaintiffs have not alleged that any demand for the return of their bitcoin was made or explained how to identify those bitcoins they claim were seized. *See HNW Fam. Off. AG v. Art Assure Ltd., LLC*, No. 17-cv-7464-ER, 2025 WL 104139, at *6 (S.D.N.Y. Jan. 15, 2025) (denying plaintiff's motion for summary judgement where plaintiff alleged the defendant "failed to turn over" and "failed to deliver" chattel, which did not meet the threshold for pleading demand). Without such a demand, a claim for replevin cannot withstand a motion to dismiss.

### B. <u>Plaintiffs Fail To Plead A Common Law Fraud Claim Under Rules 8 and 9</u>

Plaintiffs' common law fraud claim should be dismissed because they fail to allege necessary elements. Plaintiffs allege fraudulent omissions by Defendants. (Compl. ¶ 96). To state a claim for fraud based on omissions, a plaintiff must allege "(1) a material . . . omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). Further, common law fraud claims, including those premised on omissions, must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *See Wai Chu v. Samsung Elecs. Am., Inc.*, No. 1:18-cv-11742-GHW, 2020 WL 1330662, at *5 (S.D.N.Y. Mar. 23, 2020) (citing *Fin. Guar. Ins. Co.*, 783 F.3d at 402–03). To meet the Rule 9(b) requirements, a plaintiff claiming fraud "premised on omissions" must allege "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Great W. Ins. Co. v. Graham*, No. 18-cv-6249-VSB, 2020 WL 3415026, at *8 (S.D.N.Y. June 22, 2020) (quoting *In re Platinum-Beechwood Litig.*, 427 F.Supp. 395, 440 (S.D.N.Y. 2019)). Some courts have described this as the "who, what, where, when, and why" of the claim. *Wai Chu*, 2020 WL 1330662 at *5 (citing *Jovel v. i-Health, Inc.*, No. 12-cv-5614-JG, 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013)). Here, the Complaint fails to state a cause of action for fraud based on omissions for three reasons. First, it fails to plead the alleged omissions with particularity. Second, it fails to allege any facts regarding reliance on any omissions. Third, it fails to allege facts evidencing that Plaintiffs' alleged reliance caused them any injury.

### 1. The Complaint Fails To Allege The Fraudulent Omissions With Particularity

Plaintiffs allege that Defendants failed to disclose six facts relating to the market-making desk. (*See* Compl. ¶ 96(a)–(f)). Granting every possible inference, Plaintiffs fail to provide the particular detail regarding those omissions required by Rule 9(b).

#### a. The Complaint Fails To Allege Which Defendant Omitted Material Facts

Plaintiffs fail to allege which Defendant is responsible for any of the alleged omissions. Instead, Plaintiffs refer to all of the Defendants collectively as "BitMEX." (*See id*. at 1). But "plaintiff[s] must satisfy Rule 9(b) as to each defendant and cannot do so by making vague allegations about the defendants as a unit." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F.Supp. 3d 673, 729 (S.D.N.Y. 2021) (quoting *SEC v. U.S. Envtl., Inc*., 82 F.Supp. 2d 237, 241 (S.D.N.Y. 2000)).

Here, the Complaint is devoid of any reference to actions taken or conduct by any specific individual or corporate Defendant. Instead, Plaintiffs allege that "BitMEX committed fraudulent omissions" and that "BitMEX failed to disclose and/or omitted" material facts. (*See* Compl. ¶ 96). Those types of "[s]weeping references to the collective fraudulent actions of multiple defendants" do not meet the Rule 9(b) particularity standard. *In re Fyre Festival Litig*., 399 F.Supp. 3d 203, 213 (S.D.N.Y. 2019) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co*., 404 F.3d 566, 579–80 (2d Cir. 2005)).

Plaintiffs cannot benefit from the group pleading doctrine. As to individuals, courts have applied the group pleading exception where the complaint alleges that an individual was a corporate insider with direct involvement in the daily affairs of the company and is thus responsible for an alleged misstatement or omission. *See, e.g. In re NTL, Inc. Sec. Litig*., 347 F.Supp. 2d 15, 22 n.26 (S.D.N.Y. 2004) (allowing the use of the group pleading doctrine where

"the defendant was an insider with direct involvement in the daily affairs of the company."). Plaintiffs make no such allegations regarding Mr. Reed. As to Mr. Reed, Plaintiffs simply allege that he was a co-founder of HDR and ABS, that he, alongside Messrs. Hayes and Delo, "controlled the operations of BitMEX," and that "BitMEX employees who manage certain aspects of the trading facility all ultimately act under the direction and control of" the co-founders. (*See* Compl. ¶¶ 26, 28). Plaintiffs make no other allegations with respect to Mr. Reed or the role he allegedly played in omitting the material facts about which Plaintiffs complain. Plaintiffs do not allege that Mr. Reed had any daily involvement in the operations of HDR or ABS, nor do Plaintiffs allege that Mr. Reed was responsible for any public statements made by HDR or ABS. The fact that Mr. Reed exercised control generally is insufficient. *See, e.g., PetEdge, Inc. v. Garg*, 234 F.Supp. 3d 477, 493 (S.D.N.Y. 2017) (dismissing fraud claim against company executive where the complaint alleged fraudulent conduct done at the individual's "direction" and "with his knowledge and approval"). Plaintiffs have therefore failed to plead fraud against Mr. Reed with particularity.

As to corporate entities, "group pleading, by which allegations are made against families of affiliated entities[,] is simply insufficient to withstand review on a motion to dismiss." *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F.Supp. 3d 516, 559 (S.D.N.Y. 2018), *aff'd sub nom. Sonterra Cap. Master Fund, Ltd. v. UBS AG*, 152 F.4th 404 (2d Cir. 2025) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, No. 12-cv-1667-ER, 2014 WL 1396524, at *24 (S.D.N.Y. Apr. 9, 2014)). However, group pleading may be permissible where "[p]laintiffs explain the role of each [defendant] entity in the alleged fraudulent scheme." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F.Supp. 3d at 729; *HSH Nordbank AG v. RBS Holdings USA Inc.*, No. 13-cv-3303-PGG, 2015 WL 1307189, at *12, n.5 (S.D.N.Y. Mar. 23,

2015). The Complaint here does not. The Complaint alleges that "ABS is responsible for technical aspects of the platform, including security services and implementing the interface traders use to buy and sell products," (Compl. ¶ 20), that Shine Effort "was and/or is the entity through which BitMEX conducted and/or still conducts trading, both on its own BitMEX platform and with market participants on other exchanges," (*id.* ¶ 22), and that ABS, Shine Effort, and other Defendant entities *together* "engage in sufficient marketing and technical work that necessarily touches upon every facet of BitMEX's operations, including its manipulation and liquidations of its user's bitcoin," (*id.* ¶ 24). Plaintiffs allege no involvement by ABS or its employees, or Shine Effort or its employees, in omitting material facts from public statements. Plaintiffs therefore have not pleaded fraud with particularity as to ABS or Shine Effort.

Some courts have also evaluated whether corporations act as "corporate insiders" such that group pleading is permissible. *See, e.g. HSH Nordbank AG*, 2015 WL 1307189, at *12, n.5; *In re Optimal U.S. Litig.*, 837 F.Supp. 2d 244, 264 (S.D.N.Y. 2011). In such cases, "plaintiffs must allege interaction between the corporate entities relating to the subject matter of the alleged fraudulent misstatement or omission that is more than conclusory." *In re Optimal U.S. Litig.*, 837 F.Supp. 2d at 264. "[M]ere allegations of a corporate relationship are insufficient." *Id.* Here, Plaintiffs allege no facts that outline which alleged role either ABS or Shine Effort played with respect to any allegedly fraudulent statements or omissions.

**b. The Complaint Fails To Allege Any Facts Relating To The Reference Exchanges**

Two of the omitted facts identified in the Complaint relate to the alleged manipulation of prices on reference exchanges, (*see* Compl. ¶ 96(b), (e)), but the Complaint does not include any details whatsoever regarding what Plaintiffs allege the Defendants did or said (or failed to say) with respect to reference exchanges. Plaintiffs' fraud claim based on reference exchanges should

therefore be dismissed because Plaintiffs fail to meet even the Rule 8 pleading standard, much less the heightened pleading standard of Rule 9(b). *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (internal citations and quotations omitted).

### 2. <u>The Complaint Does Not Allege That Plaintiffs Relied On The Alleged Omissions</u>

Plaintiffs' Complaint does not allege the reliance element of common law fraud. A complaint alleging fraud claims premised on omissions must include "reasonable reliance on the part of the plaintiff." *Sarafianos v. Shandong Tada Auto-Parking Co.*, No. 13-cv-3895-SAS, 2014 WL 7238339, at *3 (S.D.N.Y. Dec. 19, 2014). Here, Plaintiffs fail to plead any facts showing that they relied on the disclosures which they claim omitted material facts.

First, Plaintiffs do not allege that they saw or read any of the alleged "half truths." Plaintiffs point to four public statements that they claim omitted material facts: (1) an April 30, 2018 blog post on the BitMEX website regarding the market-making desk (Compl. ¶¶ 54, 99); (2) a BitMEX website description of "hidden orders" (*id*. ¶¶ 56, 96(f)); (3) a March 13, 2020 tweet regarding a server freeze (*id*. ¶ 64); and (4) a March 17, 2020 tweet regarding a distributed denial-of-service attack which caused the March 13, 2020 server freeze (*id*.). But the Complaint does not detail these statements and does not allege that the Plaintiffs saw or read any of the four statements. Where, as here, a complaint fails to allege where or when the plaintiff saw or read any of the allegedly incomplete statements, courts in this District routinely dismiss common law fraud claims for failing to plead the reliance element. *See, e.g., GGC Int'l Ltd. v. Ver,* No. 24-cv-1533-JPC, 2025 WL 327922, at *8 (S.D.N.Y. Jan. 29, 2025) ("This absence of any allegation

concerning [plaintiff]'s actual review of the tweets is fatal to his pleading reliance"); *In re Fyre Festival Litig.*, 399 F.Supp. 3d at 216–17 (dismissing common law fraud claim and finding there is no "actual reliance" pled where plaintiffs failed to allege that they "saw, read, or otherwise noticed" the alleged misstatement).

Second, Plaintiffs fail to allege any specific action, inaction, or concrete step taken as a result of their reliance on the alleged omitted facts. Pleading "reliance" as a "state of mind" is insufficient; rather, a plaintiff must allege with particularity a specific action or inaction taken as a result of the plaintiff's reliance. *GGC Int'l Ltd.*, 2025 WL 327922, at *7–8 (dismissing common law fraud claim where plaintiff "never ties the allegedly misleading tweets to any particular decision"); *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig*, 995 F.Supp. 2d 291, 313 (S.D.N.Y. 2014) (dismissing common law fraud claim where plaintiff did not allege any purchase as a result of the misstatement). Courts dismiss a common law fraud claim where, as here, the plaintiff fails to allege a specific action or inaction taken in reliance on the fraudulent misrepresentation or omission. *See, e.g., SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 177–78 (2d Cir. 2016) (affirming dismissal where complaint alleged that plaintiff relied on misrepresentations in "deciding whether" to "purchase," "liquidate, retain or increase its investment" but did not allege that plaintiff "actually purchased or sold stock, or actually entered into or unwound a swap agreement, in reliance on defendants' misrepresentations"); *Bocci v. Nationstar Mortg. LLC*, No. 23-cv-1780-JPC-KHP, 2024 WL 4326932, at *13 (S.D.N.Y. Sept. 27, 2024) (dismissing common law fraud claim where plaintiff failed to allege how she "changed her behavior" in reliance on alleged misstatements). Here, Plaintiffs allege that they "justifiably and reasonably" relied on omitted facts and half-truths; they relied "on market conditions they perceived"; and "would not have traded on the BitMEX

platform . . . if they had known the actual facts."[4] (Compl. ¶¶ 107, 109, 111). But generalized and conclusory statements of reliance are insufficient to meet the heightened pleading standard of Rule 9(b). *See, e.g. GGC Int'l Ltd.,* 2025 WL 327922, at *7. And those generalized statements of reliance do not allege with particularity what actions or inactions Plaintiffs took. Instead, Plaintiffs' generalized allegations leave open many possibilities. Did Plaintiffs take on a particular position in reliance on an omitted fact? Which omitted fact? Which position? Was the reliance by BKX Services Inc. different from that of Mr. Namdar, or the same? Without more, Plaintiffs have failed to plead reliance with the required particularity. *See, e.g.* Report and Recommendation, *Baliga v. Link Motion Inc.,* No. 18-cv-11642-VM-VF (S.D.N.Y. June 21, 2023), ECF. No. 441 at *15–16, *report and recommendation adopted* 2023 WL 4841883, at *1 (S.D.N.Y. July 28, 2023) ("Nowhere in the [complaint] does Plaintiff specifically allege that he made the . . .purchase of stock in reliance on the announcement of the [transaction]. . . Plaintiff does not explain that he purchased shares . . . because he believed that the transaction was advantageous for the company and could lead to a rise in its share price. Nor does Plaintiff specifically allege that he purchased shares . . . following [the] misrepresentation and failure to disclose the nature of the transaction, because he believed [the] false narrative about the transaction. Instead, Plaintiff's allegations with respect to his justifiable reliance are conclusory and merely restate the element of the cause of action.").

Plaintiffs cannot rely on the rebuttable presumption of reliance pursuant to the "fraud on the market" theory, which is not available in common law fraud claims. *In re Fyre Festival Litig.*, 399 F.Supp. 3d at 217 ("courts in this Circuit have consistently held that a rebuttable

---

[4] To the extent Plaintiffs seek to argue that they were enticed to the BitMEX platform based on the alleged omissions, they have not pleaded any facts to support that argument. Plaintiffs do not even allege when they opened their BitMEX accounts, much less that they opened their accounts in reliance on a particular omission.

presumption of reliance is still not available to those alleging common law fraud") (internal quotation omitted); *MSP Recovery Claims, Series LLC v. Takeda Pharms. Am., Inc.*, No. 19-cv-5610-NRB, 2021 WL 4461773, at *12 (S.D.N.Y. Sept. 29, 2021) (dismissing common law fraud claim because fraud on the market presumption is unavailable for common law claims and the complaint "does not even attempt" "to identify an instance in which a particular doctor relied on defendants' alleged misrepresentations to write a prescription"). Courts in this district routinely refuse to presume reliance in common law fraud claims. *See, e.g. Baliga*, 2023 WL 4841883, at *1 (dismissing the complaint and adopting in full report and recommendation finding that presumption of reliance is not applicable to common law fraud claims); *Ramiro Aviles v. S & P Glob., Inc.*, 380 F.Supp. 3d 221, 283 (S.D.N.Y. 2019) ("To be sure, in fraud cases arising under the *federal* securities laws, reliance on . . . omitted information may be presumed where such information is material," but "courts have repeatedly refused to import this presumption into New York common law") (internal citation and quotations omitted); *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-md-2017-LAK, 2013 WL 5730020, at *4, n.44 (S.D.N.Y. Oct. 22, 2013) (same); *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F.Supp. 2d 368, 387 (S.D.N.Y. 2011) (same). Instead, "[c]ommon law fraud claims must be supported by factual allegations demonstrating the plaintiff's actual, direct reliance on the misrepresentation or omission." *Redtail Leasing, Inc. v. Bellezza,* No. 95-cv-5191-JFK, 1997 WL 603496, at *7 (S.D.N.Y. Sept. 30, 1997) (internal citations omitted).

**3. <u>The Complaint Fails To Allege Causation</u>**

Plaintiffs fail to plead that the alleged omitted facts caused their alleged injury. The fifth element of common law fraud is causation. *See Fin. Guar. Ins. Co*., 783 F.3d at 402. "At common law, there are three general requirements of causation: (1) but-for causation; (2) causal link; and (3) if each of these is met, that the cause be proximate." *Huey v. Anavex Life Scis.*

*Corp.*, 180 F.4th 56, 66 (2d Cir. 2026) (citing *U.S. v. Nelson*, 277 F.3d 164, 186 (2d Cir. 2002); Guido Calabresi, *Concerning Cause and the Law of Torts: An Essay for Harry Kalven, Jr.*, 43 U. Chi. L. Rev. 69, 71–72 (1975)). Plaintiffs allege that they were injured when their positions were liquidated. (Compl. ¶¶ 16, 18). To satisfy the causation element, Plaintiffs must allege that the six alleged omitted facts (Compl. ¶ 96) induced them to engage in specific transactions on the BitMEX platform (but-for causation or transaction causation) and that the Defendants' omissions directly caused the liquidations of Plaintiffs' positions (causal link or loss causation). *See Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F.Supp. 2d 428, 455–56 (S.D.N.Y. 2003) (dismissing fraud claims where plaintiff failed to plead loss causation); *Laub v. Faessel*, 745 N.Y.S.2d 534, 536–37 (1st Dep't 2002).

To plead but-for causation, plaintiffs have to answer whether they would have been harmed but for defendants' alleged omissions. *Huey*, 180 F.4th at 66. Plaintiffs fail to do so. They make only three generalized and conclusory statements regarding causation. (*See* Compl. ¶¶ 112–14 (stating generally that "BitMEX's fraud directly and proximately" caused plaintiffs' injuries on the platform)). Plaintiffs fail, however, to allege that *but for* the alleged omissions (*id.* ¶ 96), they would not have been damaged, *i.e.* have their positions liquidated, (*id.* ¶¶ 16, 18).

Plaintiffs allege no facts suggesting that because of a particular omitted fact, Plaintiffs entered into a specific position or transaction, which was ultimately liquidated, and but for the omission, the position would not have been liquidated. Nor do Plaintiffs suggest that every position placed on BitMEX was liquidated (or that Plaintiffs were harmed simply because they traded on BitMEX). Indeed, Plaintiffs admit that in some cases, their positions were not only *not* liquidated, but they made money. (*See* Compl. ¶ 113 (Plaintiffs "suffered net losses as a result of

their trading") (emphasis added)). Without more, Plaintiffs have failed to allege that the alleged omitted facts are the but-for cause of their alleged harm.

Plaintiffs similarly fail to plead causal link or loss causation. To plead loss causation, the plaintiff must allege that the "subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Spencer Trask Software*, 383 F.Supp. 2d at 455 (quoting *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F. 3d 87, 95 (2d Cir. 2001). Plaintiffs make no attempt in their Complaint to satisfy this requirement. Plaintiffs allege that Defendants made six fraudulent omissions. (Compl. ¶ 96 (a)–(f)). But the Complaint contains no allegations linking any of those alleged omitted facts to any of the claimed liquidations. (*Id.* ¶¶ 16, 18). No paragraph in the Complaint ties any liquidation to any alleged omitted fact. And with respect to certain alleged omitted facts, the Complaint affirmatively disproves loss causation. For example, Plaintiffs allege that certain tweets made on March 13, 2020, and March 17, 2020, relating to a denial-of-service attack on BitMEX, (*id.* ¶ 64), fraudulently omitted material facts, (*id.* ¶ 96(d)–(e)), but no named Plaintiff was liquidated on those dates, (*id.* ¶¶ 16, 18). If no liquidation occurred, Plaintiffs cannot possibly plead loss causation. The same is true with each omitted fact pled.

And to the extent Plaintiffs attempt to argue generally that, in reliance on the six alleged omitted facts, they engaged in transactions on the platform and, as a result, they were sometimes liquidated (though sometimes they were not), and had they never transacted, they would not have been harmed, that chain of events fails to adequately allege loss causation even if Plaintiffs could—but they do not—allege but-for causation on that theory. *See, e.g., MSP Recovery Claims, Series LLC*, 2021 WL 4461773, at *11 ("It is [] 'insufficient for a fraud plaintiff to show

merely that some chain of events beginning with a false statement by defendants led to his injury.'") (citation omitted).

Notably, as to Plaintiff Namdar, 10 of his 14 alleged liquidations occurred after April 3, 2020, the filing of the *Williams* litigation, and after the April 23, 2020, filing of the *Lee* litigation. (Compl. ¶¶ 16, 72). Accepting Plaintiffs' facts as true, as of April 3, 2020, Defendants' alleged fraudulent omissions came to light. Any liquidations following that date, therefore, could not be causally linked to fraudulent omissions. *See, e.g., MSP Recovery Claims, Series LLC*, 2021 WL 4461773, at *12 (declining to follow plaintiffs' theory of causation where plaintiffs alleged damages were incurred years after corrective disclosure).

## III. <u>The Court Does Not Have Personal Jurisdiction Over Shine Effort</u>

An exercise of personal jurisdiction over Shine Effort violates both state and federal law. Plaintiffs in conclusory fashion allege that the Court may exercise specific jurisdiction over Shine Effort under New York's long-arm statute, N.Y. C.P.L.R. § 302, "because BitMEX transacts business within the state and committed the tortious acts alleged herein within New York." (Compl. ¶ 31). Plaintiffs have failed to allege any facts sufficient to establish personal jurisdiction under §§ 302(a)(1) or (a)(2). Even if Plaintiffs could allege sufficient facts to justify specific jurisdiction under New York's long-arm statute, any exercise of personal jurisdiction over Shine Effort would be inconsistent with due process.

In disputes involving New York common law claims, personal jurisdiction is appropriate where the defendant is subject to personal jurisdiction under New York State's laws, and that exercise of personal jurisdiction complies with due process. *Aritomo v. Rhee*, No. 21-cv-4875-RA, 2022 WL 17156554, at *5 (S.D.N.Y. Nov. 22, 2022). To justify personal jurisdiction "under New York state law, the plaintiff must show 'either that [the defendant] was 'present' and 'doing business' [in New York] within the meaning of [C.P.L.R.] § 301, [general jurisdiction], or that

[the defendant] committed acts within the scope of New York's long-arm statute, [C.P.L.R.] § 302, [specific jurisdiction]." *Id.* (quoting *Schultz v. Safra Nat. Bank of New York*, 377 F. App'x 101, 102 (2d Cir. 2010)) (alteration in original). Plaintiffs have not and cannot allege sufficient facts to establish either.

Plaintiffs seem to "concede [] that the Court may not exercise general personal jurisdiction over" Shine Effort, as it is not a citizen of New York, nor does it "maintain systematic or purposeful contacts with New York." *Dance Theatre of Harlem, Inc. v. ChromaDiverse, Inc.*, No. 25-cv-2978-RA, 2026 WL 891992, at *6 (S.D.N.Y. Mar. 31, 2026). Instead, Plaintiffs attempt to establish that this Court can exercise specific jurisdiction over Shine Effort pursuant to New York's long-arm statute. Although the Complaint fails to specify which provisions of New York's long-arm statute grants personal jurisdiction over Shine Effort, it appears that Plaintiffs allege that specific jurisdiction is appropriate pursuant to C.P.L.R. §§ 302(a)(1) and (a)(2).[5] (*See* Compl. ¶ 31 ("BitMEX transacts business within the state and committed the tortious acts alleged herein within New York.")). But Plaintiffs do not allege any specific facts sufficient to demonstrate this Court has personal jurisdiction over Shine Effort pursuant to either of §§ 302(a)(1) or (a)(2). *See Berdeaux v. OneCoin Ltd.*, 561 F.Supp. 3d 379, 395 (S.D.N.Y. 2021) ("A plaintiff, however, must make allegations establishing jurisdiction with some factual specificity and cannot establish jurisdiction through conclusory assertions alone.") (internal quotation omitted)

---

[5] To the extent Plaintiffs intend for the Court to exercise specific jurisdiction under C.P.L.R. § 302(a)(3), they have failed to plead any facts sufficient to demonstrate that personal jurisdiction is proper. A plaintiff seeking to demonstrate specific jurisdiction pursuant to § 302(a)(3) must allege five facts, including that "[t]he defendant committed a tortious act *outside* the state." *Mahdi v. Midland Credit Mgmt., Inc.,* No. 25-cv-6211-RA, 2026 WL 867011, at *5 (S.D.N.Y. Mar. 30, 2026) (internal quotation omitted) (emphasis added). Plaintiffs have not alleged any facts to plead those five elements and notably claimed that "BitMEX . . . committed the tortious acts alleged herein *within* New York." (Compl. ¶ 31) (emphasis added).

### A. Plaintiffs Do Not Even Attempt To Plead Personal Jurisdiction With Respect To Shine Effort

Plaintiffs are required to allege personal jurisdiction is proper "with respect to each defendant individually." *Berdeaux,* 561 F.Supp. 3d at 396–97 (granting motion to dismiss where the "complaint is riddled with instances of improper group pleading, in which they refer to actions taken by 'the Scott Group Defendants,' without distinguishing the least among the four Defendants whom Plaintiffs have lashed together in their complaint."). This is true even where defendants are affiliated corporate entities. *In re SSA Bonds Antitrust Litig.*, 420 F.Supp. 3d 219, 233 (S.D.N.Y. 2019) (citing *In re Zinc Antitrust Litig.*, 155 F.Supp. 3d 337, 384 (S.D.N.Y. 2016)). Here, Plaintiffs make no attempt to carry their burden with respect to any defendant, including Shine Effort. Instead, Plaintiffs group together all defendants for purposes of their pleading, (*see* Compl. at 1 (referring to defendants, including Shine Effort as "collectively, 'Defendants' or 'BitMEX'")), including for purposes of personal jurisdiction by alleging that *BitMEX*, not any one specific defendant, took certain actions within New York State, (*see* Compl. ¶¶ 24, 31–33). But Plaintiffs' "group pleading is not permitted" to establish personal jurisdiction over Shine Effort, or any defendant. *In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*, 529 F.Supp. 3d 111, 135 (S.D.N.Y. 2021); *see also Tese-Milner v. De Beers Centenary A.G.*, 613 F.Supp. 2d 404, 414 (S.D.N.Y. 2009) (rejecting the argument that personal jurisdiction allegations as to one corporate affiliate could be imputed to other corporate affiliates under an "integrated enterprise" theory).[6]

[6] Plaintiffs also cannot establish jurisdiction over Shine Effort by simply referencing the plea allocutions of other defendants. *See Berdeaux,* 561 F.Supp. 3d at 398 (Plaintiffs "would not be able to rely on a finding that venue in this district is proper for the criminal cases . . . to prove that the Court has personal jurisdiction over those Defendants in this separate civil action, even if the underlying facts were identical") (internal citation omitted).

**B. C.P.L.R. 302(a)(1) Does Not Grant Personal Jurisdiction Over Shine Effort Because Shine Effort Does Not Do Business Within New York**

Plaintiffs have not (nor could they have) alleged that Shine Effort has transacted business within the meaning of § 302(a)(1). A defendant "transacts business" through "purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Am. Girl, LLC v. Zembrka,* 118 F.4th 271, 277 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1130 (2025) (quoting *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023). *See also Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) ("[t]he overriding criterion' necessary to establish a transaction of business is 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York]"). "Plaintiffs' complaint is devoid of a single factual allegation that [Shine Effort] transacted *any* business in New York." *Berdeaux,* 561 F.Supp. 3d at 400. Plaintiffs' Complaint does not contain a single paragraph alleging conduct by Shine Effort with respect to conducting business in New York, nor any conduct by Shine Effort in New York State whatsoever. Indeed, the Complaint contains only two allegations with respect to Shine Effort , and neither references conduct by Shine Effort in New York. (Compl. ¶¶ 22, 24).

Plaintiffs could not have alleged that Shine Effort transacted business in New York because Shine Effort has never done business in New York. *See* Peter Wilkinson Declaration in Support of Shine Effort's Motion to Dismiss Pursuant to Rule 12(b)(2) (hereinafter "Wilkinson Decl.") at ¶ 6. Shine Effort has never owned or leased property in or maintained an office in New York. *See, id.* ¶¶ 7–8. Shine Effort has never employed anyone in New York. *See, id.* ¶ 9. The Court therefore cannot exercise specific personal jurisdiction pursuant to § 302(a)(1) over Shine Effort.

### C. C.P.L.R. 302(a)(2) Does Not Grant Personal Jurisdiction Over Shine Effort Because Plaintiff Has Not Alleged How Shine Effort Committed the Alleged Tortious Acts Within New York

Plaintiffs have also failed to allege specific jurisdiction pursuant to § 302(a)(2) because Plaintiffs fail to allege that Shine Effort ever entered the State of New York, much less that Shine Effort committed a tortious act within the state. "[T]o assert personal jurisdiction under § 302(a)(2)[,] Plaintiff must allege that each element of the torts on which such jurisdiction is based occurred in New York." *Studio Giraffe LLC v. Nizomov*, No. 25-cv-5322-RA, 2026 WL 1413583, at *7 (S.D.N.Y. May 20, 2026) (quoting *Helio Logistics, Inc. v. Mehta*, No. 22-cv-10047-NSR, 2023 WL 21887, at *9 (S.D.N.Y. Jan. 3, 2023)). "Put another way, courts typically require that the defendant have been physically present in New York while committing the tortious act to confer jurisdiction under Section 302(a)(2)." *Id.* (internal quotation omitted); *Berdeaux*, 561 F.Supp. at 399, n.19 ("[A] defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)") (internal citation omitted); *see also Trombetta v. Novocin,* No. 18-cv-993-RA, 2021 WL 6052198, at *4 (S.D.N.Y. Dec. 21, 2021) ("The question is whether [the defendant] allegedly committed tortious conduct while present in New York State, not where the harm was suffered. Because there are no allegations that [the defendant] ever personally engaged in conduct while physically present in New York, there is no jurisdiction under § 302(a)(2)"). Where, as here, Plaintiffs fail even to allege that the defendant entered New York State, courts refuse to exercise specific jurisdiction under § 302(a)(2). *See, e.g., Berdeaux*, 561 F.Supp. 3d at 399, n.19 ("To the extent Plaintiffs ask the Court to exercise jurisdiction under 302(a)(2), that would be plainly improper . . . Plaintiffs have not alleged that [defendants] ever stepped foot in New York during the relevant period.").

### D. An Exercise Of Personal Jurisdiction Over Shine Effort Does Not Comport With Due Process

Any exercise of personal jurisdiction over Shine Effort does not comport with due process because Plaintiffs have not alleged any minimum contacts with New York State. "The touchstone due process principle" is that a court can exercise personal jurisdiction only over a defendant who has "sufficient 'minimum contacts' with the forum such that the lawsuit does not offend 'traditional notions of fair play and substantial justice.'" *In re SSA Bonds Antitrust Litig.*, 420 F.Supp. 3d at 234–35 (quoting *Dennis v. JPMorgan Chase & Co.*, 343 F.Supp. 3d 122, 200–01 (S.D.N.Y. 2018)). Specific personal jurisdiction is proper over a defendant only where the "defendant's conduct connects him to the forum in a meaningful way." *In re Aegean Marine Petrol. Network, Inc. Sec. Litig*., 529 F.Supp. 3d at 134 (quoting *Walden v. Fiore,* 571 U.S. 277, 290 (2014)). Here, Plaintiffs allege no minimum contacts by Shine Effort with New York. And even if they had, any exercise of personal jurisdiction over Shine Effort in New York would violate due process given Shine Effort's detachment from New York. For example, Shine Effort owns no property in New York. *See* Wilkinson Decl. at ¶ 7. Shine Effort does no business in New York. *See, id.* ¶ 6. Shine Effort has no employees in New York. *See, id*. ¶ 9.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed in its entirety.

Dated: September 28, 2026
New York, New York

Respectfully submitted,

**ESSEKS INGOGLIA**

By: */s/ David C. Esseks*

David C. Esseks
Rebecca Ann Cecchini
Megan Sharkey
350 Fifth Avenue, Suite 5310
New York, NY 10118

*Attorneys for Defendants ABS Global Trading Limited, Shine Effort Inc Limited and Samuel Reed*

**Local Civil Rule 7.1(c) Certification**

Pursuant to SDNY Local Rule 7.1(c) and Rule 4.A of Your Honor's Individual Rules & Practices in Civil Cases, I hereby certify that this memorandum of law, excluding the parts of the document exempted by the rules, contains 10,424 words according to the word count of Microsoft Word.

*/s/ David C. Esseks*
David C. Esseks